**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ZYRCUITS IP LLC,<br><br>                    *Plaintiff*,<br><br>   v.<br><br>SIGNIFY NORTH AMERICA CORPORATION,<br><br>                    *Defendant*. | Civil Action No. 1:19-cv-01609-CFC |

**DEFENDANT'S OPENING BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**


OF COUNSEL:

Jeremy P. Oczek (*pro hac vice*)
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue
Buffalo, New York 14202-2107
(716) 416-7000
jpoczek@bsk.com

Kenneth L. Dorsney (I.D. #3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Defendant
Signify North America Corporation*

## TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF PROCEEDING ................................................................. 1

II. INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................. 1

III. LEGAL STANDARDS .................................................................................................. 3

    A. Patent Eligibility Under 35 U.S.C. § 101 ............................................................. 3

    B. Compliance With 35 U.S.C. § 287. ...................................................................... 4

IV. ARGUMENT .................................................................................................................. 5

    A. The '307 Patent Lacks Patent-Eligible Subject Matter. ........................................ 5

        1. *Alice* Step 1: The '307 Patent Is Directed to the Abstract Idea of Storing, Selecting, and Sending Data .......................................................... 5

        2. *Alice* Step 2: The '307 Patent Does Not Contain an Inventive Concept. ..................................................................................................... 10

    B. The '307 Patent Expired Before Signify Received Actual or Constructive Notice Thereof, and Therefore No Relief Can Be Granted for Any Alleged Infringement. ....................................................................................................... 12

V. CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Accenture Global Servs. v. Guidewire Software, Inc.*,
    728 F.3d 1336, 1341 (Fed. Cir. 2013) ................................................................. 3, 4

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1269 (Fed. Cir. 2016) ............................................................................ 2, 7

*Alice Corporation Pty. Ltd v. CLS Bank International*,
    134 S. Ct. 2347 (2014) ......................................................................................passim

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
    876 F.3d 1366 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 143 (2018) .............. 2, 4, 13

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1291 (Fed. Cir. 2018) ................................................................................. 4

*BuySAFE v. Google, Inc.*,
    765 F.3d 1355 (Fed. Cir. 2014) ............................................................................... 11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, National Association*,
    776 F.3d 1347 (Fed. Cir. 2014) ....................................................................... 1, 6, 11

*Data Engine Technologies. LLC v. Google LLC*,
    906 F.3d 999, 1013 (Fed. Cir. 2018) ....................................................................... 11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1255 (Fed. Cir. 2014) ................................................................................. 4

*Digitech Image Technologies., LLC v. Electronics. for Imaging, Inc.*,
    758 F.3d 1351 (Fed. Cir. 2014) ................................................................................. 6

*Elec. Power Group., LLC v. Alstom S.A.*,
    830 F.3d 1354 (Fed. Cir. 2016) ................................................................................. 3

*Express Mobile, Inc. v. Liquid Web, LLC*,
    *No.* 1:18-cv-01177-RGA, 2019 U.S. Dist. LEXIS 64362 (D. Del. Apr. 15, 2019) .............. 5, 13

*FairWarning IP, LLC v. Iatric Systems.*,
    839 F.3d 1097 (Fed. Cir. 2016) ................................................................................. 3

*Horatio Wash. Depot Techs. LLC v. Tolmar, Inc.*,
    No. 1:17-cv-1086-LPS, 2018 U.S. Dist. LEXIS 187074 (D. Del., Nov. 1, 2018) .............. 13-14

*Horatio Wash. Depot Techs. LLC v. Tolmar, Inc.*,
   No. 1:17-cv-1086-LPS, 2019 U.S. Dist. LEXIS 45453 (D. Del., Mar. 20, 2019) ............... 13-14

*IMX Inc. v. Lendingtree* LLC,
   469 F.Supp.2d 203h.19 (2007) ................................................................................................ 13

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1368 ...................................................................................................................... 7, 11

*Intellectual Ventures I LLC v. Capital One Financial. Corporation.*,
   850 F.3d 1340 (Fed. Cir. 2017) ........................................................................................ 6, 9-10

*Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.*,
   76 F. Supp. 3d 544 (D. Del. 2014) .............................................................................................. 3

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1322 (Fed. Cir. 2016) ................................................................................................... 4

*Jedi Technologies, Inc. v. Spark Networks, Inc.*,
   No. 16-1055-GMS, 2017 U.S. Dist. Lexis 122813 (D. Del. Aug. 3, 2017) ........................... 5-6

*Kearns v. Chrysler Corp.*,
   32 F.3d 1550 (Fed. Cir. 1994) ................................................................................................... 12

*OIP Techologies., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1362 (Fed. Cir. 2015) ................................................................................................... 3

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1326 (Fed. Cir. 2017) ............................................................................................... 1, 6

*SAP America., Inc. v. Investpic, LLC*,
   898 F.3d 1161, 1166 (Fed. Cir. 2018) ..................................................................................... 3, 6

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1149 (Fed. Cir. 2016) ................................................................................................... 4

*In re TLI Communications LLC Patent Litigation*,
   823 F.3d 607, 611 (Fed. Cir. 2016) ............................................................................... 1, 6, 8, 10

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*,
   874 F.3d 1337 (Fed. Cir. 2017) ............................................................................................ 6, 8-9

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 719 (Fed. Cir. 2014) ..................................................................................................... 3

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
  No. 12-cv-329, 2015 U.S. Dist. LEXIS 91403 (C.D. Cal., Mar. 10, 2015) ................................ 2

**Statutes**

35 U.S.C. § 101 .................................................................................................... 1, 3, 4, 14

35 U.S.C. § 283 ............................................................................................................. 12

35 U.S.C. § 284 ............................................................................................................. 12

35 U.S.C. § 285 ......................................................................................................... 2, 12

35 U.S.C. § 287 ............................................................................................................. 12

35 U.S.C. § 287(a) ............................................................................................ 2, 4, 12, 13

**Rules**

Rule 12(b)(6) ......................................................................................................... 1, 12, 14

Defendant Signify North America Corporation ("Signify") respectfully submits this brief in support of its motion to dismiss the Complaint filed by Plaintiff Zyrcuits IP LLC ("Zyrcuits").

## I. NATURE AND STAGE OF PROCEEDING

On August 29, 2019, Zyrcuits filed suit against Signify alleging infringement of U.S. Patent No. 6,671,307 ("the '307 patent"), which had expired in 2018.

On September 16, 2019, Zyrcuits filed a stipulation to extend the deadline for Signify to respond to Zyrcuits' complaint. The extended deadline is October 25, 2019.

## II. INTRODUCTION AND SUMMARY OF ARGUMENTS

Signify moves to dismiss Zyrcuits' Complaint (D.I. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6), on two grounds: (1) patent ineligibility and (2) failure to plead compliance with the marking statute.

*First,* the Complaint should be dismissed because the '307 patent—which issued long before the Supreme Court's decision in *Alice Corporation Pty. Ltd v. CLS Bank International*, 134 S. Ct. 2347 (2014)—fails to claim patent-eligible subject matter under 35 U.S.C. § 101.

The claims in the '307 patent are directed exclusively to storing, selecting, and sending data over a communications channel—concepts which have been held to be abstract.[1] Moreover, the claims of the '307 patent provide no "inventive concept" that could transform them into patent-eligible subject matter. All of the components of the claimed system are generic—a "memory," "encoder," and "transmitter"—defined in terms of the standard functions they

---

[1] *See, e.g., RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (claimed "method reflects standard encoding and decoding, an abstract concept long utilized to transmit information"); *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016) (claim "drawn to the concept of classifying an image and storing the image based on its classification" patent ineligible); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The concept of data collection, recognition, and storage is undisputedly well-known.").

perform. Indeed, "the recited physical components merely provide a generic environment in which to carry out the abstract idea of" sending data over a communications channel. *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (internal quotations omitted). As such, the '307 patent fails to claim patent-eligible subject matter.

*Second*, the Complaint should also be dismissed because Zyrcuits has not pled[2] that it has complied with its obligations under 35 U.S.C. § 287(a). Section 287(a) requires that "[i]n the event of failure … to mark" any patented article made, offered for sale, sold, or imported by a patentee or its licensees, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." Because Zyrcuits' Complaint does not plead that products were marked as required, nor that Signify was notified of alleged infringement prior to expiration of the '307 patent, Zyrcuits failed to state a claim for infringement upon which any relief could be granted.

For these reasons, Signify respectfully requests that the Court dismiss Zycuit's Complaint with prejudice. Signify further requests that the Court order Zyrcuits to pay Signify's attorneys' fees for defending this lawsuit. Although the question of whether this case is "exceptional" under 35 U.S.C. § 285 is not ripe until entry of judgment, courts have held that objectively baseless or unreasonable infringement claims, including filing suit on an expired patent combined with failure to mark, are sufficiently egregious to support fee shifting. *See, e.g., Universal Elecs, Inc. v. Universal Remote Control, Inc.*, No. 12-cv-329, 2015 U.S. Dist. LEXIS 91403, at *25 (C.D. Cal., Mar. 10, 2015) (ordering plaintiff to pay defendant's attorneys' fees).

---

[2] "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Rec. Prods Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 143 (2018) (citations omitted).

## III. LEGAL STANDARDS

### A. Patent Eligibility Under 35 U.S.C. § 101.

"Patent eligibility under 35 U.S.C. § 101 is an issue of law." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). "[I]n many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."[3] *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (internal citation, quotation omitted); *see also, SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018).

In *Alice*, the Supreme Court set out a two-step framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. 2355.

The first step is to determine if the patent claims are directed to a patent-ineligible concept such as an abstract idea. "To do so the court must first identify and define whatever fundamental concept appears wrapped up in the claim." *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (internal citation, quotation omitted). For example, computer-implemented claims that involve "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more," and claims reciting only functional results without describing any improvement in computer functionality, are abstract and ineligible for patent protection under 35 U.S.C. § 101. *Elec. Power Group., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

If the claims are directed to a patent-ineligible abstract idea, then the court proceeds to step two and determines whether the claim includes an inventive concept sufficient to establish

---

[3] Subject-matter-eligibility questions do not require claim construction when "the asserted claims disclosed no more than an abstract idea garnished with accessories and there [is] no reasonable construction that would bring [them] within patentable subject matter." *Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*, 76 F. Supp. 3d 536, 544 (D. Del. 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014)) (quotations omitted).

"that the claim is more than a drafting effort designed to monopolize the abstract idea." *Alice*, 134 S. Ct. at 2357 (internal citations, quotations, alterations omitted). The claim must "amount[] to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). "As a matter of law, narrowing and reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018). Likewise, appending well-known, routine, or conventional steps to an abstract idea, or reciting the abstract idea and adding do it "on . . . a computer," is not enough to provide an inventive concept. *Alice*, 134 S. Ct. at 2358.

"The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). Indeed, the Federal Circuit has held that it is error to rely on "technical[] details set forth in the patent's specification and not set forth in the claims to find an inventive concept." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016). The Federal Circuit has explained, for example, that the "complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture*, 728 F.3d at 1345.

### B. Compliance With 35 U.S.C. § 287.

Under 35 U.S.C. § 287(a), "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement" which can be accomplished either directly, by an action for infringement, or publicly, by marking of patentee's patented articles. To rely on marking, a patentee must mark substantially all of its patented articles, and must also ensure that its licensees mark substantially all of their patented articles as well. *See Arctic Cat,* 876 F.3d at 1366.

"A claim for past damages requires pleading compliance with the marking statute—even when compliance is achieved, factually, by doing nothing at all." *Express Mobile, Inc. v. Liquid Web, LLC*, No. 1:18-cv-01177-RGA, 2019 U.S. Dist. LEXIS 64362, at *4 (D. Del. April 15, 2019) (granting defendant's motion to dismiss plaintiff's claims for past damages).

## IV. ARGUMENT

### A. The '307 Patent Lacks Patent-Eligible Subject Matter.

The '307 patent, entitled "Spread-Spectrum High Data Rate System and Method," is directed toward the abstract idea of sending data over a communications channel. The '307 patent contains eight claims, all of which are independent claims. Claim 3, the *only* claim asserted Zyrcuits' Complaint, is set forth below:

> An improvement to a spread-spectrum transmitter for sending data over a communications channel, comprising:
>
> a **memory for storing** N bits of data as stored data, with N a number of bits in a symbol;
>
> a chip-sequence **encoder**, coupled to said memory, **for selecting**, responsive to the N bits of stored data, a chip-sequence signal from a plurality of chip-sequence signals stored in said chip-sequence encoder, as an output chip-sequence signal; and
>
> a **transmitter section**, coupled to said chip-sequence encoder, **for transmitting** the output chip-sequence signal as a radio wave, at a carrier frequency, over said communications channel, as a spread-spectrum signal.

At its core, asserted claim 3 merely recites a "memory" for storing data, an "encoder" for selecting a signal from signals stored in the encoder, and a "transmitter" to transmit the signal over a communications channel, all of which are generic components and functions.

### 1. *Alice* Step 1: The '307 Patent Is Directed to the Abstract Idea of Storing, Selecting, and Sending Data.

"A bedrock principle under *Alice* step one involves distilling claims to their basic concepts to determine whether they are directed to abstract ideas." *Jedi Tech, Inc. v. Spark*

*Networks, Inc.*, No. 16-1055-GMS, 2017 U.S. Dist. Lexis 122313, at *21 (D. Del. Aug. 3, 2017); *see also SAP America.,* 898 F.3d at 1167 ("The first stage of the Alice inquiry looks at the 'focus' of the claims ….").

Here, the basic concepts of the '307 patent are clear from the claim—**storing data**, **selecting data (e.g., manipulating data)**, and **transmitting data**. These concepts, however, have been held by the Federal Circuit to be abstract. For example:

- *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The concept of data collection, recognition, and **storage** is undisputedly well-known.") (emphasis added).

- *In re TLI Communications*, *LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016) (claim "drawn to the concept of classifying an image and **storing** the image based on its classification" patent ineligible) (emphasis added).

- *Intellectual Ventures I LLC v. Capital One Fin.. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) ("We conclude that the patent claims are, at their core, directed to the abstract idea of collecting, displaying, and **manipulating data**.") (emphasis added).

- *Digitech Image Techs., LLC v. Electronics. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("Without additional limitations, a process that employs mathematical algorithms to **manipulate existing information** to generate additional information is not patent eligible.") (emphasis added).

- *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (claimed "method reflects standard encoding and decoding, an abstract concept long utilized to **transmit information**") (emphasis added).

- *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (affirming the invalidity of a claim for **transmitting** digital audio/video content that "require[d] the functional results of 'converting,' 'routing,' 'controlling,' monitoring,' and 'accumulating records,' but d[id] not sufficiently describe how to achieve the results in a non-abstract way.").

Furthermore, claims reciting only functional results, without describing any particular improvement in computer functionality for achieving those results, are abstract. *See Intellectual*

*Ventures I,* 850 F.3d at 1342 ("[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more."); *Affinity Labs*, 838 F.3d at 1269 ("The purely functional nature of the claim confirms that it is directed to an abstract idea, not a concrete embodiment of that idea") (citation omitted).

Here, every tangible component recited in asserted claim 3 of the '307 patent is defined in purely functional terms:

1) First, a generic "**memory**" is solely defined as "**for storing** N bits of data as stored data".

2) Second, a "chip-level **encoder**" is solely defined as "**for selecting**, responsive to the N bits of stored data, a chip-sequence signal from a plurality of chip-sequence signals stored in said chip-sequence encoder, as an output chip-sequence signal"—this is merely a generic processor[4] that selects data.

3) Finally, a "**transmitter section**"—which the '307 patent acknowledges is merely a generic transmitter known in the prior art[5]—is solely defined as "**for transmitting** the output chip-sequence signal as a radio wave, at a carrier frequency, over said communications channel, as a spread-spectrum signal".

Thus, each of the tangible components recited in asserted claim 3 are merely generic components defined in terms of the generic functions they perform. The fact that these functions are implemented in a computer system does not render them patent-eligible. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (reciting "generic computer elements performing generic computer tasks does not make an abstract idea patent eligible.").

---

[4] The specification explains that "[t]he claimed invention may be manufactured, in whole or in part, as a digital signal processor (DSP), as an application specific integrated circuit (ASIC), from a general purpose processor, from discrete and/or analog electronic components, or as a combination of one or more of the DSP, ASIC, general purpose processor and discrete and/or analog components." (Col. 3, ll. 49-56). These are merely generic computer components.

[5] The '307 patent explains that the "transmitter section, in FIGS. 3 and 4, includes product device 15, a signal source 16, and an antenna 17." (Col. 6, ll. 8-9.) These **exact** components are shown **identically** in FIGS. 1 and 2, which are identified as "Prior Art."

Asserted claim 3 of the '307 patent is similar to other claims found by the Federal Circuit to be directed to an abstract idea. For example, in *In re TLI Communications*, the Federal Circuit found the following claim to be abstract and thus patent ineligible:

> 17.    A method for recording and administering digital images, comprising the steps of:
>
> recording images using a digital pick up unit in a telephone unit, storing the images recorded by the digital pick up unit in a digital form as digital images,
>
> **transmitting data** including at least the digital images and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images,
>
> receiving the data by the server,
>
> **extracting classification information** which characterizes the digital images from the received data, and
>
> **storing the digital images in the server**, said step of storing taking into consideration the classification information.

823 F.3d 607 at 611 (holding that, even though the claims recited concrete, tangible components, the claims were directed to an abstract idea because the components merely provided a generic environment in which to carry out the abstract idea). Like claim 17 in *TLI Communications*, which involved "**storing** the digital images in the server," "**extracting** classified information," and "**transmitting** data," asserted claim 3 of the '307 patent is directed to **storing**, **selecting**, and **transmitting** data and is also abstract.

As another example, in *Two-Way Media*, the Federal Circuit found the following claim to be abstract and thus patent ineligible:

> 1.    A method for **transmitting** message packets over a **communications network** comprising the steps of:
>
> converting a plurality of streams of audio and/or visual information into a plurality of streams of addressed digital packets complying with the specifications of a network communication protocol,

>for each stream, routing such stream to one or more users,
>
>**controlling the routing of the stream of packets in response to selection signals** received from the users, and monitoring the reception of packets by the users and accumulating records that indicate which streams of packets were received by which users, wherein at least one stream of packets comprises an audio and/or visual selection and the records that are accumulated indicate the time that a user starts receiving the audio and/or visual selection and the time that the user stops receiving the audio and/or visual selection.

874 F.3d at 1337 ("Claim 1 recites a method for routing information using result-based functional language. The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way."). Like claim 1 in *Two-Way Media*, which involved "**controlling the routing of the stream of packets *in response* to selection signals**," asserted claim 3 of the '307 patent is directed to **"selecting, *responsive* to the N bits of stored data, a chip-sequence signal from a plurality of chip-sequence signals**" and is also abstract.

As a further example, in *Intellectual Ventures I*, the Federal Circuit found the following apparatus claim to be abstract and thus patent ineligible:

>21. An apparatus for manipulating XML documents, comprising:
>
>a **processor**;
>
>a **component that organizes data components** of one or more XML documents into data objects;
>
>a component that identifies a plurality of primary record types for the XML documents;
>
>a **component that maps the data components** of each data object to one of the plurality of primary record types;
>
>a component that organizes the instances of the plurality of primary record types into a hierarchy to form a management record type;
>
>a component that defines a dynamic document for display of an instance of a management record type through a user interface; and

> a component that detects modification of the data in the dynamic document via the user interface, and in response thereto modifies a data component in an XML document.

850 F.3d at 1339, 1341 ("[T]he underlying concept embodied by the limitations merely encompasses the abstract idea itself of organizing, displaying, and manipulating data of particular documents."). Like claim 21 in *Intellectual Ventures I*, which involved **organizing** and **mapping data**, asserted claim 3 of the '307 patent is directed to **storing** and **selecting data** (and then transmitting the data) and is also abstract.

Under the first step of the *Alice* test, asserted claim 3 is simply directed to basic and well-known concepts of storing, selecting, and transmitting data, without describing how to achieve these results in a non-abstract way.

### 2.   *Alice* Step 2: The '307 Patent Does Not Contain an Inventive Concept.

Turning to the second step of the *Alice* test, asserted claim 3 of the '307 patent does not "add an inventive concept to [the] otherwise abstract idea[s]" of storing, selecting, and sending data. *In re TLI Communications*, 823 F.3d at 614.

Indeed, asserted claim 3 of the '307 patent does not claim any particular technique or solution that "improve[s] the functioning of the computer itself." *Alice*, 134 S. Ct. at 2359. For example, the "memory" in asserted claim 3 is simply a generic computer memory. The "chip-level encoder" is simply described in the claim as manipulating data in a routine way. Even the specification acknowledges that the "chip level encoder" is nothing more than a generic computer component (e.g., "digital signal processor (DSP)," "an application specific integrated circuit (ASIC)," "a general purpose processor," "discrete and/or analog electronic components," or "a combination of one or more of the DSP, ASIC, general purpose processor and discrete and/or analog components.") (Col. 3, ll. 49-56). Finally, the "chip-level encoder" is recited as being used "for selecting, responsive to the N bits of stored data, a chip-sequence signal from a

plurality of chip-sequence signals stored in said chip-sequence encoder, as an output chip-sequence signal," but the claim does not specify or provide any other detail as to *how* such selection is done. Indeed, the "transmitter section" is merely a generic transmitter known in the prior art, as acknowledged by the '307 patent.

Therefore, these generic components fall squarely within Federal Circuit precedent finding generic components insufficient to add an inventive concept to an otherwise abstract idea. *Alice,* 134 S.Ct. at 2360 ("Nearly every computer will include a 'communications controller' and a 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."); *Content Extraction,* 776 F.3d at 1345, 1348 ("storing information" into memory, and using a computer to "translate the shapes on a physical page into typeface characters," are insufficient to confer patent eligibility); *Intellectual Ventures I,* 792 F.3d at 1368 (a "database" and "a communication medium" "are all generic computer elements"); *BuySAFE v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

Finally, the lack of specificity or any inventive concept here risks significant preemptive effect—which the Supreme Court has identified as the core harm in allowing patents that claim abstract concepts. *See, e.g.*, *Alice*, 134 S. Ct. at 2354 ("We have described the concern that drives this exclusionary principle as one of pre-emption.").

In short, "[t]hese claims do not recite anything more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1013 (Fed. Cir. 2018) (internal quotations, citation omitted). As such, the '307 patent fails to claim patent-eligible subject matter, and the Complaint should be dismissed with prejudice.

### B. The '307 Patent Expired Before Signify Received Actual or Constructive Notice Thereof, and Therefore No Relief Can Be Granted for Any Alleged Infringement.

Because Zyrcuits' Complaint asserted the already-expired '307 patent, but failed to plead compliance with 35 U.S.C. § 287, the Complaint should also be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim as to the '307 patent on which any relief could be granted.

Title 35 of the United States Code provides two varieties of relief for patent infringement: Injunction under § 283, and damages under § 284. Since the '307 patent expired prior to Zyrcuits filing suit, Zyrcuits cannot and does not seek an injunction against any alleged future infringement, only damages. *See* Complaint (D.I. 1) at pp. 7-8; *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994).

The patent marking statute, 35 U.S.C. § 287, limits the damages available to a patentee on proof of infringement. It requires that:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. **In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.** Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a) (emphasis added). Thus, a patentee who fails to mark any patented article made, offered for sale, sold, or imported by a patentee or its licensees cannot recover damages absent actual notice of patentee's infringement allegations prior to expiration of the patent.

"The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat*, 876 F.3d at 1366 (citations omitted). This Court has held that marking is required for system and method patents. *IMX, Inc. v. Lendingtree,* LLC, 469 F.Supp.2d 203, 221, n.19 (D. Del. 2007) (plaintiff "not entitled to pre-litigation damages because plaintiff did not comply with its duty to mark its IMX Exchange system," which was a system and method for trading loans on the internet).

In a recent case in this District, *Express Mobile, Inc. v. Liquid Web, LLC*, No. 1:18-cv-01177-RGA, 2019 U.S. Dist. LEXIS 64362, at *1 (D. Del. Apr. 15, 2019), the court dismissed claims for past damages because Plaintiff failed to plead compliance with the marking statute:

> Defendants separately note that Plaintiff has failed to plead compliance with the marking statute. (C.A. 18-1177, D.I. 14 at 7-8; C.A. 18-1181, D.I. 28 at 7- 10). They argue that this is a basis to dismiss Plaintiff's claims to the extent that they seek past damages. *35 U.S.C. § 287(a)* requires that a patentee who makes or sells a patented article mark the articles to recover past damages. It is the patentee's burden to plead compliance with *§287(a)*. *Arctic Cat Inc. v. Bombardier Rec. Prods., 876 F.3d 1350, 1366 (Fed. Cir. 2017)*. Plaintiff avers that there is no evidence that there was anything for it to mark, but does not argue that it pled compliance. (*See* C.A. 18-1177, D.I. 16 at 5-7; C.A. 18-1181, D.I. 30 at 5-6). **At the motion to dismiss stage, I am only concerned with the sufficiency of the claims. A claim for past damages requires pleading compliance with the marking statute—even when compliance is achieved, factually, by doing nothing at all. Thus, as Plaintiff has failed to state a claim for past damages, I will grant Defendants' motions.**

*Id.* at *4-5 (emphasis added).

In another case in this District, *Horatio Wash. Depot Techs. LLC v. Tolmar, Inc.*, No. 1:17-cv-1086-LPS,2018 U.S. Dist. LEXIS 187074, at *39-40 (D. Del., Nov. 1, 2018), *report and recommendation adopted in full*, 2019 U.S. Dist. LEXIS 45453, at *2 (D. Del., Mar. 20, 2019), the court dismissed claims **with prejudice** with respect to two expired patents because Plaintiff failed to plead compliance with the marking statute. The court also rejected Plaintiff's argument that it was not subject to the marking requirement because it was not "in privity" with the prior

owner of the patents, stating: "if there was a failure to mark by any prior or current patentee (as there was here, by prior patentee ALZA), then 'no damages shall be recovered *by the patentee* [including current patentee Plaintiff] in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter[.]'" *Id*. at *24-25 (emphasis in original) (citations omitted).

Because Zyrcuits did not plead that authorized products were marked as required, nor that Signify was notified of the alleged infringement prior to expiration, Zyrcuits could not receive any relief were it to prove infringement of the '307 patent. Zyrcuits' Complaint therefore fails to state a claim for infringement of the '307 patent upon which any relief could be granted, and Rule 12(b)(6) mandates dismissal with prejudice accordingly.

## V. CONCLUSION

For the reasons discussed herein, the Court should dismiss with prejudice Zyrcuits' Complaint in its entirety because: (1) the '307 patent fails to claim patent-eligible subject matter under 35 U.S.C. § 101; and (2) Zyrcuits can receive no relief for any alleged infringement of the '307 patent, which expired prior to suit. Signify also respectfully requests that the Court order Zyrcuits to pay Signify's attorneys' fees for defending this lawsuit under 35 U.S.C. § 285.

| | |
|---|---|
| Dated: October 25, 2019 | Respectfully submitted, |
| | /s/ *Kenneth L. Dorsney* |
| | Kenneth L. Dorsney (I.D. #3726) |
| | MORRIS JAMES LLP |
| OF COUNSEL: | 500 Delaware Avenue, Suite 1500 |
| | Wilmington, Delaware  19801-1494 |
| Jeremy P. Oczek (*pro hac vice*) | (302) 888-6800 |
| BOND, SCHOENECK & KING, PLLC | kdorsney@morrisjames.com |
| 200 Delaware Avenue | |
| Buffalo, New York  14202-2107 | *Attorneys for Defendants* |
| (716) 416-7000 | *Signify North America Corporation* |
| jpoczek@bsk.com | |